# UNITED STATES DISTRICT COURT

## District of Kansas

(Kansas City Docket)

UNITED STATES OF AMERICA,

          **Plaintiff,**

    v.                           **CASE NO. 2:24-cr-20092-DDC-ADM**

THOMAS CUNNINGHAM,
      a/k/a  Thomas Totten,

          **Defendant.**

# INFORMATION

**THE UNITED STATES ATTORNEY CHARGES**:

At all times relevant to this Information:

## BACKGROUND

1.      The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As

part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders.  These loans have government-backed guarantees.

2.      Silver Lake Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.  Among other things, Silver Lake bank provided loans to applicants who satisfied certain qualifications.  Silver Lake Bank had locations in Kansas.

3.      Intrust Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.  Among other things, Intrust Bank provided loans to applicants who satisfied certain qualifications.  Intrust Bank had locations in Kansas.

4.      Defendant Thomas Cunningham, also known as Thomas Totten, was a resident of Kansas.

5.      Carpet Cleaners Deluxe, LLC was a State of Kansas Limited Liability Company. Defendant Cunningham was the resident agent.

6.       Priority One Coastal Transport LLC was a State of Kansas Limited Liability Company. Defendant Cunningham was the resident agent.

7.      TVT Security Solutions LLC was a State of Kansas Limited Liability Company.  Defendant Cunningham, using the name Thomas Totten, was the resident agent.

8.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020, and, among other things, was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by

the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

9.      To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses, typically this would include payroll expenses reported to the IRS by way of filed tax returns.

10.     When a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

11.     PPP loan proceeds were required to be used for certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities.  Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness

if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

***The Economic Injury Disaster Loan ("EIDL") Program***

12.     The Economic Injury Disaster Loan ("EIDL") Program, which was administered through the Small Business Administration ("SBA"), offered loans to small business owners who had suffered an economic loss during a natural disaster. Congress expanded the financial resources of the EIDL program when it enacted the CARES Act. Under the CARES Act, the EIDL program expanded its eligibility to include loans for non-profit organizations, sole proprietors, and independent contractors.  The CARES Act also authorized the SBA to provide EIDL loans of up to $2 million per loan.  The CARES Act authorized the SBA to issue loan advances up to $10,000 to small entities.  The amount of the advance was determined by an entity's number of employees and the advances do not have to be repaid.

13.  In order to obtain an EIDL loan and/or advance, a qualifying business must have submitted an application to the SBA and provide particular information about its operations, such as the number of employees, and the gross revenues and costs of goods sold for the 12-month period preceding January 31, 2020. The amount of the loan, if the application was approved, was determined, in part, on the information provided by the applicant about the employment, revenue, and cost of goods, as described above. The loan

applicant must also certify that all information provided in the application was true and correct to the best of the applicant's knowledge.

14.  EIDL applications were submitted directly to the SBA.  Further, any funds issued under an EIDL loan or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and fixed debts, such as utilities, rent, and mortgage payments.

## THE FALSE STATEMENTS

15.   Beginning in and around May 2020, and continuing until in and around September 2020, Defendant Cunningham submitted PPP and EIDL loan applications that contained false information.

16.   Defendant Cunningham, through Carpet Cleaners Deluxe, LLC, applied for a PPP loan through Silver Lake Bank.  In the PPP application, Defendant Cunningham falsely claimed that Carpet Cleaners Deluxe, LLC had eleven employees with an average monthly payroll of $38,413.  As part of the PPP loan application process, Cunningham provided Silver Lake Bank with two Internal Revenue Service (IRS) Form 941 documents that he purported were filed with IRS.  The IRS documents Cunningham submitted falsely claimed that Carpet Cleaners Deluxe LLC had paid $115,239.00 in wages for each of the quarters covered by the documents. Further, the IRS Form 941 documents were never actually filed with IRS.  Defendant Cunningham received $96,000 from the PPP loan.

17. Defendant Cunningham, through Priority One Coastal Transport, LLC, applied for a PPP loan through Silver Lake Bank.  In the PPP application, Defendant Cunningham falsely claimed that Priority One Coastal Transport, LLC had nine employees with an

average monthly payroll of $53,984.58.  As part of the PPP loan application process,
Defendant Cunningham provided Silver Lake Bank with four IRS Form 941 documents
that he purported were filed with IRS.  The IRS documents Defendant Cunningham
submitted falsely claimed that Priority One Coastal Transport, LLC had paid $650,997.17
in wages in 2019. Further, the IRS Form 941 documents were never actually filed with
IRS.  Defendant Cunningham received $134,900 from the PPP loan.

18.   Defendant Cunningham, through TVT Security Solutions, applied for a PPP
loan through Intrust Bank.  In the PPP application, Defendant Cunningham falsely claimed
that TVT Security Solutions had thirteen employees with an average monthly payroll of
$59,629.67.  As part of the PPP loan application process, Defendant Cunningham provided
Intrust Bank with an IRS Form 941 document that he purported was filed with IRS.  The
IRS document Cunningham submitted falsely claimed that TVT Security Solutions had
paid $178,899 in wages for the last quarter in 2019. Further, the IRS Form 941 document
was never actually filed with IRS. Defendant Cunningham received $149,900 from the PPP
loan.

## COUNT 1

**False Statement in a Loan Application**
**[18 U.S.C. § 1014]**

19.    Paragraphs one through eighteen are incorporated and realleged herein.

20.    On or about May 8, 2020, in the District of Kansas and elsewhere, the

defendant,

## THOMAS CUNNINGHAM,
## a/k/a  Thomas Totten,

knowingly made a false statement for the purpose of influencing the action of Silver Lake

Bank, a financial institution whose accounts are insured by the Federal Deposit Insurance

Corporation, in connection with an application and loan, in that Defendant Cunningham

submitted false IRS forms 941 to the bank that contained false information and was not

actually filed with IRS in connection with a PPP loan application for Carpet Cleaners

Deluxe, LLC.

In violation of Title 18, United States Code, Section 1014.


KATE E. BRUBACHER
United States Attorney
District of Kansas


By: /s/ D. Christopher Oakley
Assistant United States Attorney
District of Kansas
500 State Avenue, Suite 360
Kansas City, Kansas  66101
Ph: (913) 551-6730
Fax: (913) 551-6541
Email: chris.oakley@usdoj.gov
Ks. S. Ct. No. 19248

IT IS REQUESTED THAT THE TRIAL BE HELD IN KANSAS CITY, KANSAS

## PENALTIES

**Count One [False Statement in connection with a loan application]**

- Punishable by a term of imprisonment of not more than thirty (30) years.  18 U.S.C. § 1014.

- A term of supervised release of not more than five (5) years.  18 U.S.C. § 3583(b)(2).

- A fine not to exceed $1,000,000  18 U.S.C. § 1014.

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).